IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

RAMONA DUNGEE, surviving mother )
and Personal Representative of the Estate )
of ARTIE HALES, deceased, )
 )
          Plaintiffs, )
 )
vs ) NO. CIV-14-232-D
 )
BOARD OF COUNTY COMMISSIONERS )
of the COUNTY OF OKLAHOMA, and )
JOHN WHETSEL, in his official capacity )
as Oklahoma County Sheriff, )
 )
          Defendants. )

**O R D E R**

Before the Court is Defendants' motion to dismiss Plaintiff's Complaint [Doc. No. 11], filed pursuant Fed. R. Civ. P. 12(b)(1) and (b)(6). Defendants assert that Plaintiff's state law tort claims are jurisdictionally barred due to noncompliance with Oklahoma's Governmental Tort Claims Act. Defendants also assert that suing both the Board of County Commissioners of Oklahoma County and Sheriff John Whetsel in his official capacity is duplicative and improper; they suggest the Board should be dismissed. Finally, Defendants assert that the Complaint fails to allege sufficient facts to state a plausible § 1983 claim, as required by *Bell Atlantic Corp. v. Twombly*, 550 U. S. 544, 570 (2007).

Plaintiff states that she is not asserting any state law tort claim but she is seeking to recover under 42 U.S.C. § 1983 damages set forth in Oklahoma's wrongful death statute, Okla. Stat. tit. 12, § 1053. Plaintiff, as the mother of the decedent and his sole survivor,

seeks damages for his estate and "damages for the loss of the relationship with her son." Pl.'s Response [Doc. No. 12] at 3. Plaintiff agrees the suit against Sheriff Whetsel in his official capacity is actually a suit against Oklahoma County, but she contends discovery is necessary to determine whether the Board of County Commissioners or Sheriff Whetsel had final policymaking authority in the situation at issue. She argues "there is no harm in keeping both the Board and the Sheriff as defendants because it is clear the suit is solely against the County." *Id.* at 5. Plaintiff also contends discovery is needed to discover the facts necessary to support her theories of county liability.

Defendants in reply assert that damages under Section 1983 for a person's wrongful death are limited to the injuries and losses sustained by the decedent, and do not extend to the losses of survivors, citing *Berry v. City of Muskogee*, 900 F.2d 1489 (10th Cir. 1990). Defendants argue that the Complaint does not allege a violation of any right of Ramona Dungee to a relationship with her son, and thus she cannot recover damages for a loss of that relationship. Also, Defendants maintain that discovery is not necessary to determine who sets policy for the jail because the trial court determines the final policymaker for the governmental actor concerning the acts alleged to have caused the constitutional violation, citing *Jett v. Dallas Independent School District*, 491 U.S. 701, 737-38 (1989), and *McMillian v. Monroe County*, 520 U. S. 781, 784-85 (1997); and by statute in Oklahoma a county sheriff is legally responsible for policymaking at the county jail, citing Okla. Stat. tit. 19, §§ 513, 517, 513.1 and 547, and Okla. Stat. tit. 57, §§ 42, 47, and 52. Finally, Defendants reiterate that dismissal is proper because Plaintiff's Complaint fails to identify

2

any official policy or custom that violated the decedent's constitutional rights or any individuals who may have committed a constitutional wrong.

### **State Law Claims**

The parties agree that procedural prerequisites to suit under the Oklahoma Governmental Tort Claims Act are jurisdictional, and Plaintiff did not follow those procedures. Plaintiff disclaims any state law tort claim. Plaintiff maintains, however, that she can recover all categories of damages set forth in Oklahoma's wrongful death statute, including her loss of the parental relationship. Defendants disagree.

In *Berry v. City of Muskogee*, 900 F.2d 1489, 1504 (10th Cir. 1990), the Tenth Circuit first concluded that Oklahoma's survival statute would not be borrowed for § 1983 actions because the survival action "is clearly deficient in both its remedy and its deterrent effect." The Tenth Circuit further concluded that because the substantive right enforceable under § 1983 is that of the decedent, *id*. at 1504-05, looking to a wrongful death death statute was problematic because "traditionally these statutes have been viewed as creating a new cause of action for the benefit of survivors." *Id*. at 1504. In the final analysis, after reviewing Supreme Court authority and other authorities, the Tenth Circuit concluded that "supplementing a state survival action with a state wrongful death action does not satisfy the criteria of § 1988 for borrowing state law." *Id*. at 1506. Rather, it concluded that "federal courts must fashion a federal remedy to be applied to § 1983 death cases." *Id.* The proper remedy is "a survival action, brought by the estate of the deceased victim, in accord with § 1983's express statement that the liability is 'to the party injured.'" *Id.* at 1506-07. The

3

court determined that "appropriate compensatory damages would include medical and burial expenses, pain and suffering [of the decedent] before death, loss of earnings based on the probable duration of the victim's life had not the injury occurred, the <u>victim's</u> loss of consortium, and other damages recognized in common law tort actions." *Id*. at 1507 (emphasis added).

In light of the forgoing, Plaintiff may not recover damages for her own loss of the parental relationship or any other damages under Oklahoma's wrongful death statute that are not part of the federal remedy in § 1983 death cases set out in *Berry*.

## **Proper Defendant**

In Oklahoma, a suit against a county must be brought by naming the board of county commissioners of that county. See Okla. Sat. tit. 19, § 4. Under federal law, "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *Moss v. Kopp*, 559 F.3d 1155, 1168 n.2 (10th Cir. 2009). Thus, bringing "a claim against [a sheriff] in his official capacity . . . is the same as bringing a suit against the county." *See Martinez v. Beggs*, 563 F.3d 1082, 1091 (10th Cir. 2009). In this case, asserting claims against both Defendants Board of County Commissioners of Oklahoma County and Sheriff Whetsel in his official capacity is duplicative and unnecessary. Plaintiff agrees that her suit is against the County. Accordingly, Sheriff Whetsel in his official capacity should be dismissed.

Whether a particular official has final policymaking authority for purposes of § 1983 is a question of state law. *See*, *e.g., McMillian v. Monroe County,* 520 U. S. 781, 786 (1997).

4

Under Oklahoma law, a county sheriff is the final policymaker with regard to the county's jail, *see* Okla. Stat. tit. 19, § 513; Okla. Stat. tit. 57, § 47; *see also Lopez v. LeMaster*, 172 F.3d 756, 763 (10th Cir. 1999), and the county (by suit against the board of county commissioners) may be liable for the sheriff's actions as final policymaker with regard to the jail. *Lopez,* 172 F.3d at 763. Accordingly, Plaintiff is wrong to assert that discovery is needed to determine who, as between the Board of County Commissioners and Sheriff Whetsel, set relevant policies or customs for the county jail.

## Sufficiency of the Complaint

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see Robbins v. Oklahoma*, 519 F. 3d 1242, 1247 (10th Cir. 2008). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Plaintiff's Complaint conclusorily alleges that the decedent's "injuries and death were a direct result of the acts of Deputies acting . . . pursuant to the official policy, practice, pattern or custom of the County and Sheriff of improperly hiring, training, supervising and disciplining deputy sheriffs – demonstrating the County's and the Sheriff's deliberate indifference to Decedent's safety and well-being." *See* Compl. [Doc. No. 1], ¶ 16. She further alleges "[t]he official policy, practice, pattern or custom of failing to separate

5

prisoners based on their mental or physical condition or on the nature of the crimes for which detainees were charged (i.e. housing dangerous, violent detainees with non-violent detainees) and the failure to enforce such a policy, demonstrates Defendants' deliberate indifference to the safety of non-violent detainees such as Artie Hales. . . ." *Id.* at ¶ 17.

Plaintiff's allegations of a policy, practice, or custom of improperly hiring, training, supervising, and disciplining deputy sheriffs fails to identify what the deficiency was and fails to suggest that any deficiency caused the deprivation of the decedent's constitutional rights or caused his injuries and death. When the policy alleged concerns inadequate training, a plaintiff must identify the specific deficiency and show that the deficiency was closely related to the injury such that the policy or custom could fairly be said to be the moving force behind the injury. *See Porro v. Barnes*, 624 F.3d 1322, 1328 (10th Cir. 2010) (citing *Lopez v. LeMaster*, 172 F.3d 756, 760 (10th Cir. 1999), and *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)). *See also Dobbs v. Richardson*, 614 F.3d 1185, 1202 (10th Cir. 2010) (there must be a direct causal link between adoption or implementation of a policy and the deprivation of federally protected rights). Plaintiff also has not alleged any facts showing the need for more or different hiring, training, supervision or discipline was so likely to result in the violation of a pretrial detainee's rights that the policymaker, Sheriff Whetsel, can reasonably be said to have been deliberately indifferent to the constitutional rights of pretrial detainees, as is necessary for the County to be liable under § 1983 based on policy of inadequate hiring, training, supervision, and discipline. *See City of Canton*, 489 U.S. at 389;

*Porro*, 624 F.3d at 1328.[1] The Court therefore finds that Plaintiff's allegations concerning a policy, practice, or custom of improper hiring, training, supervision, and discipline of deputy sheriffs in conjunction with Plaintiff's other allegations fail to state a plausible § 1983 claim against the County.

However, as indicated above, Plaintiff also alleges an official policy, practice, or custom of failing to separate prisoners based, *inter alia*, on the nature of the crimes of which the detainees were charged such that dangerous, violent detainees were housed with nonviolent detainees. It may reasonably be inferred that such official policy or practice was established by the final policymaker, Sheriff Whetsel. Plaintiff further alleges, though inartfully, that this policy "demonstrated Defendants' deliberate indifference to the safety of non-violent detainees such as Artie Hales," the decedent, because it was known or obvious that failing to separate nonviolent detainees from violent ones was very likely to result in a violation of the constitutional rights of a nonviolent detainee, like Mr. Hales. *See* Compl. [Doc. No. 1], ¶ 17. Plaintiff has also alleged that the pretrial detainee who killed Mr. Hales had gouged the eye of another detainee a few days before Mr. Hales was put in a cell with him. *Id*. at ¶ 10. The Court is of the opinion that these allegations are sufficient, though barely so, to state a plausible claim against the County for liability based on a policy of not separating violent or dangerous detainees from nonviolent detainees.

---

[1] The Tenth Circuit has stated: "We treat allegations of failure to supervise (which often may be distinguishable from failure to train) the same way." *Whitewater v. Goss*, 192 F. App'x 794, 797 (10th Cir. 2006).

In accordance with the foregoing, Defendants' Motion to Dismiss [Doc. No. 11] is GRANTED in part and DENIED in part, as set forth herein. Plaintiff's claim as a survivor of the decedent for damages under Oklahoma's wrongful death statute is DISMISSED. Plaintiff's claim against Sheriff Whetsel in his official capacity is DISMISSED as duplicative of Plaintiff's claim against Defendant Board of County Commissioners. Plaintiff's § 1983 claim predicated on a policy, practice, or custom of improper hiring, training, supervision, and discipline of deputy sheriffs is DISMISSED.[2] Plaintiff's Complaint sufficiently states a § 1983 claim predicated on an official policy, practice, or custom of failing to separate violent, dangerous inmates from other inmates of the Oklahoma County Detention Center.

IT IS SO ORDERED this 12th day of May, 2014.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE

---

[2] Plaintiff does not request leave to amend her Complaint if it is found to be deficient; she instead argues that discovery is needed to obtain additional facts regarding her claims. Accordingly, leave to amend will not be granted at this time. *See Burnett v. Mortgage Electronic Registration Sys., Inc.*, 706 F.3d 1231, 1238 n.4 (10th Cir. 2013) ("Where a plaintiff does not move for permission to amend the complaint, the district court commits no error by not granting such leave."). However, the dismissal is without prejudice to a future request for leave to amend within the time period to be set by the scheduling order.